IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PABLO RUIZ VELEZ,

                Plaintiff,

v.

LILY LIU and TAMMY MAASSEN,

                Defendants.

OPINION and ORDER

23-cv-418-wmc

---

      Representing himself, plaintiff Pablo Ruiz Velez claims that Dr. Lily Liu and Health Services Manager Tammy Maasen denied him timely and effective medical treatment for a fractured clavicle while he was incarcerated at Jackson Correctional Institution. Plaintiff was granted leave to proceed on those claims under the Eighth Amendment and Wisconsin medical malpractice law. Defendants have now filed motions for summary judgment, arguing that plaintiff's claims lack merit. (Dkt. ##44, 52.) Plaintiff filed his own motion for summary judgment (dkt. #59), as well as moved for assistance in recruiting counsel (dkt. #58). Even viewing the evidence in a light most favorable to plaintiff, no reasonable jury could find that defendants unreasonably responded to plaintiff's medical needs in violation of the Eighth Amendment or state medical malpractice law. Thus, the court will grant defendants' motions for summary judgment and deny plaintiff's motion. The court will also deny plaintiff's motion for assistance in recruiting counsel because plaintiff's claims were not too complex for him to litigate on his own, but rather failed for lack of evidence showing that defendants violated his rights.

UNDISPUTED FACTS[1]

On July 9, 2022, while incarcerated at Jackson Correctional Institution, plaintiff Pablo Ruiz Velez injured his right shoulder while playing basketball. After being taken to the Health Services Unit ("HSU") in a wheelchair, nursing staff directed that he be taken to the local hospital emergency room. At the hospital, plaintiff was diagnosed with a dislocated clavicle fracture. However, the hospital providers initially recommended non-operative treatment. So instead, plaintiff was prescribed an arm sling and extra pillows for sleeping, as well as as well as Vicodin, Toradol, Ibuprofen and Tylenol for the pain.

Because plaintiff's clavicle fracture failed to heal over the next several weeks, he eventually underwent surgery on his clavicle at Gundersen Hospital on November 18, 2022. The surgery was initially successful, and plaintiff had fully recovered by January 31, 2023. However, on February 27, 2023, plaintiff felt severe pain in his shoulder. He sent a Health Service Request ("HSR") to the HSU stating that, "about 3 months ago, I had a surgery for a broken collar bone. But unfortunately something is wrong and I am having pain. Can I be seen for this issue concern. Thank you." (Dkt. #55-1, at 50.)

The HSU received plaintiff's HSR on February 28, 2023, and it was triaged by nursing staff that same day. Specifically, HSU nursing staff responded by stating, "Your offsite visit on 1/31/23 said you were doing well regarding your clavicle issue. I schedule[d] you to see nursing." (*Id.*) Initially, plaintiff was scheduled to be seen in HSU the following day -- March

---

[1] Unless otherwise indicated, the following facts are undisputed and drawn from the parties' proposed findings of facts and responses, and from the undisputed record evidence where appropriate. The court notes that plaintiff's summary judgment motion and response were filed late and do not comply with the court's summary judgment procedures, prompting defendants to file motions to strike (dkt. #63 and dkt. #65). Given plaintiff's unrepresented status, the court will deny the motions to strike and has considered plaintiff's filings for purposes of deciding the parties' cross-motions for summary judgment.

2

1, 2023. However, because security staff apparently failed to notify him of the appointment while he was working, plaintiff missed that appointment. He was then rescheduled to be seen on March 6, but he missed that appointment as well. After missing the second appointment, HSU staff next sent plaintiff a letter stating:

> You were scheduled to be seen in HSU on 3/01/2023 and 3/06/2023. You did not present to HSU on either of these days when called. If you are still having difficulty with your shoulder please place another HSR and you will be rescheduled to be seen in HSU."

(*Id.* at 44.)

On March 7, 2023, plaintiff submitted two HSRs. The first went to HSU and stated:

> On 3-1/3-6 I was probably at work. Unit CO's never call me at work. Yes I am in pain. I need to go to HSU or hospital. As I was sleeping on my clavicle side I felt a snap and out of place. I am in invariable pain. Please help me with my concern. Thank you."

(*Id.* at 49.) In the second HSR, which he marked as an "emergency" and addressed it to "HSU Manager Ms. Maassen," plaintiff wrote, "my shoulder surgery is not adequate and pull apart. I am in pain and suffering (clavicle surgery right side)." (*Id.* at 48.) However, Maassen's position as HSU Manager was primarily managerial and administrative, meaning she did not triage or review HSRs, unless specifically forwarded to her by the nursing staff responsible for triage. As a result, both of plaintiff's March 7 HSRs were received by HSU on March 8 and triaged by nursing staff, who responded that plaintiff would be seen that same day, and neither HSR was forwarded to Maassen.

Moreover, plaintiff did in fact see a nurse that same day, March 8, 2023. According to the nurse's note from that visit, plaintiff reported that "he rolled over in his bed the other day and felt a pop," then noticed a deformity in the clavicle area with some swelling and pain. (*Id.* at 4.) In response, nursing staff ordered an x-ray. Also that same day, plaintiff saw physical

3

therapist Darin Krzyzanowski, which was a previously scheduled physical therapy following his clavicle surgery in November of 2022. Krzyzanowski noted plaintiff's visit with nursing for right clavicular pain and noted a deformity on examination. (*Id.* at 12.) He also noted that plaintiff would have an x-ray.

The x-ray taken on March 8, 2023, disclosed an "[a]cute appearing clavicle re-fracture with fragmented sideplate." In other words, the x-ray showed a new fracture of the clavicle in the same location as the prior fracture and that the plate placed to hold the clavicle ends together was broken. That same day, Dr. Daniel LaVoie entered an order for an extra pillow, ice therapy, and ibuprofen.

Still later that day, plaintiff filed three more HSRs. First, he wrote that the surgeon had not done a good job and complained that, "There is a remaining large bone fragment which should have been removed, which is causing me unnecessary pain." In the second HSR, he expressed concern about possible defective hardware in his clavicle and asked to be seen by an advanced care provider. (Dkt. #55-1, at 47.) Nursing staff responded to these two HSRs by stating they were "working on getting [him] into orthopedics." (*Id.*) In plaintiff's third HSR filed on March 8, 2023, he further requested that the HSU send him copies of his actual x-ray. To this, HSR Nursing staff responded that the x-rays were not yet in his file but that he should file another request in a week.

On March 10, 2023, plaintiff submitted two more HSRs asking that the "defective hardware" be addressed, prompting the triaging nurse to schedule a nurse visit for him. That same day, plaintiff saw an HSU nurse and requested pain control. The nurse contacted the on-call provider, who placed an order for Tylenol and Ibuprofen.

4

On March 13, 2023, plaintiff was treated offsite at Gundersen Health System's Orthopedic Surgery department in La Crosse. That provider confirmed that the surgery hardware had broken, and at the provider's suggestion, surgery was scheduled for March 16, 2023. The provider also entered an order for Tramadol until March 21, 2023, for pain control.

On March 15, 2023, the Inmate Complaint Examiner ("ICE") contacted HSM Maassen regarding an inmate complaint filed by plaintiff in which he complained about receiving "inadequate medical care" for his broken collar bone. This March 15 contact was the first time that Maassen became aware of plaintiff's ongoing clavicle issue. Maassen then reviewed plaintiff's medical file, reported to the ICE the medical appointments her office had arranged for plaintiff, and concluded that in her view, there was no evidence of inadequate medical care. At the time, plaintiff was scheduled to have surgery the following day.

On March 16, 2023, plaintiff had a surgical revision to his right clavicle at Gundersen Hospital. The surgeon's post-operative plan included that plaintiff: receive a right upper extremity sling, vitamin D supplements, and no NSAIDs; keep dressings on the surgical sight for 5 days; be treated for a deep vein thrombosis prophylaxis; and have a follow up in 3-4 weeks for a wound check and an x-ray for his right clavicle. Later that day, nursing staff emailed Dr. Liu asking her whether she agreed with the surgeon's recommendations. Dr. Liu responded affirmatively and directed the nurse to add Tylenol if not already ordered.

OPINION

Plaintiff was granted leave to proceed on Eighth Amendment and state medical malpractice claims against Dr. Lily Liu and Tammy Maassen for their allegedly having delaying sending him to the hospital to obtain medical treatment -- specifically, surgery to repair the

defective hardware in his clavicle, which failed in late February 2023. Each defendant filed motions for summary judgment and plaintiff cross-moved for the same.

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In deciding whether to grant summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison officials from acting with "deliberate indifference" to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). To prevail on an Eighth Amendment claim based on deficient medical care, plaintiff must show that: (1) he has an objectively serious medical condition; and (2) defendants acted with deliberate indifference to that condition. *Arnett*, 658 F.3d at 750; *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). The first element, an objectively serious medical condition, is one that a doctor recognizes as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Pyles*, 771 F.3d at 412. The court finds the first element satisfied, given that plaintiff's fractured clavicle and associated pain sufficiently establish an objectively serious medical condition. However, plaintiff's claim falls short at the second element needed to prevail on an Eighth Amendment claim, given that he offers *no* evidence that either defendant acted with deliberate indifference to his condition. Far from it, the record

6

supports a finding that both defendants acted responsibly and timely to plaintiff's needs as presented.

To begin, this second element necessary for an Eight Amendment claim relates to the government official's subjective state of mind.  *Arnett*, 658 F.3d at 750.  Thus, plaintiff must show that each defendant actually knew of and disregarded a substantial risk of harm.  *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015).  This is where plaintiff's proof is lacking.  With respect to Dr. Liu, the undisputed medical records show that Liu had almost no involvement in treating plaintiff's clavicle injury.  Although plaintiff alleged in his complaint that he had filed multiple HSRs directly addressed to Liu, the medical record refutes this.  Instead, the record shows that none of plaintiff's HSRs about his clavicle injury and pain were addressed to Liu; nor did Liu play any role in triaging or reviewing any of them.  In fact, Lui's *only* involvement in plaintiff's care occurred on March 18, 2023, when she responded to an email to approve plaintiff's post-operative treatment and prescribe Tylenol.  Based on this record, no reasonable jury could conclude that Liu acted with deliberate indifference.

As for HSU Manager Maassen, she likewise provided no personal care or treatment to plaintiff concerning his right clavicle.  Rather, the evidence shows that from February 27 to March 16, 2023, plaintiff submitted only *one* HSR directed to Maassen on March 8, and even this HSR was *not* forwarded to Maassen.  As a result, Maassen was not even aware of plaintiff's clavicle issue until she was consulted by the ICE about plaintiff's inmate complaint on March 15, 2023.  By that time, plaintiff was already scheduled to have his second, right-clavicle revision surgery the next day.  Thus, no reasonable jury could find that Maassen was responsible for any delay in sending plaintiff to the hospital after his first surgery failed.

Finally, plaintiff cannot succeed on his medical malpractice claims against either defendant. Medical malpractice under Wisconsin law is the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis. 2d 124, 149 (1999). Like all negligence claims, a medical negligence claim requires the following four elements: (1) breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. Dr. Liu and HSU Manager Maassen could not be found liable for medical malpractice for the same reasons they cannot be found liable for violating the Eighth Amendment. Neither was responsible for providing medical care for plaintiff's clavicle and, in any event, the record shows that plaintiff actually received proper care. In fact, only 17 days passed between the time plaintiff filed his first post-surgery HSR on February 28, 2023, complaining about pain, to plaintiff's follow-up surgery on March 16, 2023. In that time, plaintiff missed two appointments (March 1 and 6), was seen by a nurse and received an x-ray in HSU on March 8, was scheduled and seen by Gunderson Orthopedic on March 13, and had revision surgery on March 16. Although plaintiff would have no doubt liked his clavicle problem to be addressed even sooner, this type of delay does not amount to negligence, much less gross negligence or deliberate indifference. Accordingly, defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. The motions for summary judgment filed by that defendants Lily Liu (dkt. #44) and Tammy Maassen (dkt. #52) are GRANTED.

2. Plaintiff Pablo Ruiz Velez's motion for summary judgment (dkt. #59) and motion for assistance in recruiting counsel (dkt. #58) are DENIED.

3. Defendants' motion to strike plaintiff's summary judgment filings (dkt. #63 and dkt. #65) are DENIED.

4. The clerk of court is directed to enter judgment and close this case.

Entered this 6th day of March, 2026.

>BY THE COURT:
>
>/s/
>
>_____
>WILLIAM M. CONLEY
>District Judge